C. A. Gillespie died in the year 1854, leaving a will which was duly proved; and there being no executor named therein, the plaintiff was appointed Administrator with the will annexed, by the County Court *Page 205 
of Guilford. The administrator seeks the advice of the Court as to the proper construction of the will, which is as follows:
"Item 1. I give and devise unto my beloved wife, Frances Gillespie, the house and lot whereon I live, all my household and kitchen furniture, and all necessary firewood off of my land, and also the proceeds of the annual hire of my negroes; which said property my said wife is to have during her life, and after her death, to go to the children which my daughter Louisa Whittington may leave at her death, she, to wit, my said daughter, having the benefit of said property, to her sole and separate use, during her life, after the death of my said wife.
"Item 2. I give absolutely to my said wife, one half the value, and one half the increase of a negro girl, Jane; the other half the value, and half the increase, I give to my grand-son, Monroe Whittington, and his heirs forever; also to my said wife, one horse and one cow, her choice of each, my carriage and the interest of all my money on hand, or at interest at my death. (246)
"Item 3. I give and bequeath to my grand-son, Monroe Whittington, my gold watch, a good horse, saddle and bridle; and to my grand-son, Henry Whittington, my silver watch, also a good horse, saddle and bridle. I also give to my grand-son, Monroe, a negro girl, Doucy Anne, and her issue, to him, his heirs and assigns forever; but if he should die under age, and leave no issue, then the girl, Doucy Anne, and her issue, are to be equally divided between his brothers and sisters.
"Item 4. All the residue of my property not herein disposed of, whether of her own acquisition, or belonging to me by descent, devise, or otherwise, I desire may be equally divided between the children of my daughter, Louisa J. Whittington, that may survive her.
"Item 5. I also give, devise and bequeath to my grandson, not yet named, he being the third child of my daughter, Louisa J. Whittington, a good horse, saddle and bridle."
The widow of the testator dissented from the will, and claims her dower in the land, and a third of the personal property, besides a year's allowance in the crop, stock and provisions. Louisa J. Whittington is the only child and heir-at-law of the testator, and having intermarried with Alphonzo Whittington, has three children, to wit: Monroe, Henry, and Charles, besides being enceinte with another.
The plaintiff states in his bill, that he has sold all the personal property, except the slave sand the watches; and being in doubt as to *Page 206 
the construction of the will, asks the instruction and direction of the Court in the following particulars:
As the widow has dissented from the will, what becomes of that which was left to her for life? Does it go to Mrs. Whittington immediately, or is her enjoyment of it to be still postponed to the death of the widow Frances?
If Mrs. Whittington takes it now, is it to be paid and delivered to her husband and herself, or to some other person for her?
Inasmuch as all the slaves would seem to be included in the (247) first clause, giving the widow their hires for her life, and then to Louisa for her life, when is Monroe, who is an infant, five years old, to come to the possession and enjoyment of his legacy of half the value of the slaves, Jane and Doucy Ann, and their issue? Would he be safe in delivering the slave, Doucy Ann, to Alphonzo Whittington, as the guardian of his son, Monroe? What is to be done with the girl, Jane, the widow having dissented? Can she be sold, and the money distributed — if so, upon what terms? — or is she still to be hired out, in order that Louisa may get her share of the hire for her life?
What is he to do with the watches? and what is his duty in relation to the horse, saddle and bridle bequeathed to each of these infants? Is he to buy such articles, if they be not on hand? — and if so, at what time? — and if to be bought, from what source is he to raise the funds?
What is the Administrator's duty in regard to the residuum under the 4th clause of the will? Does Mrs. Whittington take an estate by implication under the will? or is it hers by descent during her life?
The widow, Mrs. Frances Gillespie, Alphonzo Whittington, and his wife Louisa J. Whittington, and their children, by their guardian, all join in an answer, admitting the facts as set out in the plaintiff's bill, and agree to submit to the advice and direction of the Court in the premises.
The cause was set down for hearing on the bill, answer and exhibit, and removed to this Court by consent.
The will which is now submitted to us for construction, does not disclose much inherent difficulty in the ascertainment of its meaning. The doubts which are suggested in relation to it, have been raised principally by the act of the testator's widow in dissenting from it. By that dissent she has become entitled to her dower of one-third of *Page 207 
all the testator's real estate for her life, and to an absolute interest in one-third of all his personal property which may remain (248) after the payment of all the debts and the charges of administration; but her share "shall be allotted to her in such manner as to create as little derangement of the provisions of the will, as practicable." (Rev. Stat. ch. 121, sec. 12; Rev. Code ch. 118, sec. 12).
Having premised these remarks, we proceed to state the construction which, in our opinion, must now be placed upon the will. The dissent of the widow has removed her life-estate from all the property given to her by the will, and which she does not take independently of it, and the effect of it is to hasten the enjoyment of the life-estate devised and bequeathed to the testator's daughter. The estate thus given to the daughter, embraces all the slaves which may not be allotted to the widow; for though the girl Doucy Ann, and one-half of the girl Jane, are given to the testator's grandson, Monroe Whittington, in terms which might otherwise import a present bequest, yet, to make it consistent with the first clause of the will, the bequest must be subject to the life-estate of the legatee's mother. It is unnecessary to decide whether Mrs. Whittington takes the real estate for her life by implication from the will, or by descent, as being undisposed of by the devise. It is certain she takes it the one way or the other; because the interest of her children in it is expressly postponed until her death. The gold and silver watches are specific legacies, and must be delivered to the guardian of the legatees, to be kept for them. The testator, not having such articles on hand to make the legacies specific, could not have intended horses, bridles and saddles to be brought immediately for children from one to five years old; but the legatees to whom they are given, will be entitled to their value at the death of their mother, which will make their shares of the residue greater, by the value of such horses, etc., than those of the other children, in the division at the death of their mother. The share of Monroe Whittington, in that division, will be further increased by the girl, Doucy Ann, and her increase, and by half the value of the girl Jane.
In allotting the widow's share, she must have, as a part of it, (249) half of the value of the girl, Jane, and for the purposes of a division, the girl must be sold; and after the widow gets half the proceeds, the interest on the other half must be paid to the daughter for life, and then the principal will belong to Monroe.
As the property given to the daughter for her life, is expressed to be for her sole and separate use, she must have a trustee appointed to hold it for her, to whom it will be the duty of the administrator to deliver it. The daughter's estate for life, in the real estate, whether acquired by *Page 208 
descent or devise, is sufficiently secured to her by the Act of 1848, ch. 41. (Rev. Code ch. 56, sec. 1).
The necessary accounts must be taken, and the cause will be retained for further directions upon the coming in of the report.
Per curiam.
Decree accordingly.
Cited: Wilson v. Stafford, 60 N.C. 649; University v. Barden,132 N.C. 484, 506; Young v. Harris, 176 N.C. 635. TrustCo. v. Johnson, 236 N.C. 597.